UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FLOYD PATTERSON and
DARLENE PATTERSON,

       Plaintiffs,

v.

ASSET RECOVERY MANAGEMENT,
INC. and JACSON RENELL VANREED,

       Defendants.
_____/

COMPLAINT

**I.**    **Introduction**

    1.    Plaintiffs are consumers. Defendants are a repossession company and its employee. This is an action for damages. Defendants breached the peace and violated multiple laws in the course of taking plaintiffs' motor vehicle from plaintiffs' residence.

**II.**    **Jurisdiction**

    2.    This Court has jurisdiction under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692k(d), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding plaintiffs' state law claims under 28 U.S.C. § 1367. Venue in this judicial district is proper because the pertinent events took place here.

**III.**    **Parties**

    3.    Plaintiff Floyd Patterson is an adult, natural person residing in Kent County, Michigan. Mr. Patterson is the husband of plaintiff Darlene Patterson. Mr. Patterson is a

1

"consumer" and "person" as the terms are defined and used in the FDCPA.  Mr. Patterson is a "consumer," "debtor" and "person" as the terms are defined and used in the MOC.

4. Plaintiff Darlene Patterson is an adult, natural person residing in Kent County, Michigan. Mrs. Patterson is the wife of plaintiff Floyd Patterson.  Mrs. Patterson is a "consumer" and "person" as the terms are defined and used in the FDCPA.  Mrs. Patterson is a "consumer," "debtor" and "person" as the terms are defined and used in the MOC.

5. Defendant Asset Recovery Management, Inc. ("ARM") is a Michigan corporation, located at 230 Colrain Street S.W., Grand Rapids, Michigan 49548. ARM does business under multiple, registered assumed names, including Asset Recovery Management, Diversified Recovery, and Western Mutual Recovery. The registered agent for ARM is Jeff DeKruyter, 230 Colrain Street S.W., Grand Rapids, Michigan 49548. The officers of ARM are Jeff DeKruyter and Steven Bennecke. ARM uses interstate commerce and the mails in a business the principal purpose of which is the enforcement of security interests. ARM is a "debt collector" as the term is defined and used in the FDCPA. ARM is licensed (No. 2401001848) by the State of Michigan as a "collection agency" and "licensee" as the terms are defined and used in MOC.

6. ARM and its employees and agents directly and indirectly participated in the unlawful taking of Plaintiffs' motor vehicle and related events that are described in this complaint.

7. Defendant Jacson R. VanReed, age 52, is a natural person, purportedly residing at 3540 Wilson Avenue S.W., Grandville, Michigan 49418-1855.  At all times relevant to the events described in this complaint: (a) Mr. VanReed was an employee and agent of ARM; (b) Mr. VanReed used interstate commerce and the mails in a business the principal purpose of

which was the enforcement of security interests; and (c) Mr. VanReed was a "debt collector" as the term is defined and used in the FDCPA.

8. Mr. VanReed directly and indirectly participated in the unlawful taking of Plaintiffs' motor vehicle and related events that are described in this complaint.

9. An entity that itself meets the definition of debt collector is liable for the unlawful collection activities carried out by another debt collector on its behalf. *See, e.g., Pollice v. National Tax Funding, L.P.,* 225 F.3d 379, 404-06 (3d Cir.2000); *Janetos v. Fulton Friedman & Gullace, LLP,* 825 F.3d 317, 325-26 (7th Cir.2016); *Fox v. Citicorp Credit Services, Inc.,* 15 F.3d 1507, 1516 (9th Cir.1994); *Wadlington v. Credit Acceptance Corp.,* 76 F.3d 103, 108 (6th Cir.1996); *Verburg v. Weltman, Weinberg & Reis Co., LPA et al.,* No. 1:13-cv-1328, 2016 WL 1273349, *7-8 (W.D. Mich. Mar. 28, 2016).

**IV. Facts**

10. On or about November 4, 2015, plaintiff Darlene Patterson purchased a 2007 Chevrolet Tahoe ("Tahoe") from LAC Auto Sales Inc. Mrs. Patterson purchased the Tahoe for personal, family and household purposes. Mrs. Patterson purchased the Tahoe on credit, by way of a retail installment contract, agreeing to make 48 monthly installment payments, with the first payment due on December 4, 2015. LAC Auto Sales Inc. retained a security interest in the Tahoe.

11. On or about November 4, 2015, LAC Auto Sales Inc. sold its right to receive monthly payments under the retail installment contract as well as its security interest in the Tahoe to Credit Acceptance Corporation ("CAC").

12. LAC Auto Sales Inc. advised Mrs. Patterson that CAC would be sending Mrs. Patterson a payment coupon book and related instructions to facilitate Mrs. Patterson's monthly

payments to CAC.  However, Mrs. Patterson did not received the documents prior to the due date for her first monthly payment.

13.     The Pattersons communicated multiple times with LAC Auto Sales Inc. as well as CAC regarding the promised payment documents, but as of early January 2016, Mrs. Patterson had not received the documents.

14.     Sometime prior to January 10, 2016, CAC declared Mrs. Patterson to be in default under the terms of the retail installment contract and hired defendant Asset Recovery Management, Inc. to repossess the Tahoe from Mrs. Patterson.

15.     The Patterson property has a two-stall detached garage, located in the backyard, with access to the garage via a narrow driveway that lies adjacent to the north side of the house.

16.     On Sunday, January 10, 2016 at approximately 3:00 p.m., defendant Jacson Renell VanReed, in his capacity as an employee of ARM, and driving a tow truck, arrived announced at the Patterson residence located at 4169 Heron Avenue S.W., Wyoming, Michigan . Accompanying Mr. VanReed was a male passenger, believed to by Mr. VanReed's adult son.

17.     Mr. VanReed backed up the two truck, via the driveway, into the Pattersons' back yard.  The Tahoe was parked outside of the garage, with the front bumper of the Tahoe a few inches from the left garage door, which was closed.

18.     Mr. VanReed and his passenger immediately began efforts to attach equipment to the Tahoe in efforts to tow the Tahoe away.

19.     The noise made by Mr. VanReed and his passenger awakened Mr. Patterson from a nap. Mr. Patterson looked out a window, saw Mr. VanReed and his passenger attempting to take the Tahoe, and assumed that they were attempting to steal the Tahoe.

20.     Mr. Patterson, wearing only his underwear, went into his back yard and angrily

confronted Mr. VanReed and his passenger. Mr. VanReed stated that he was there to repossess the Tahoe. Mr. Patterson repeatedly stated that he would not allow Mr. VanReed to take the Tahoe. Mr. Patterson repeatedly yelled at Mr. VanReed and his passenger, demanding that they get off of his property.

21. Mr. VanReed stated that he was going to call the police. Mr. Patterson stated that he too wanted the police to be summoned.

22. Mr. VanReed and his passenger, working at opposite sides of the Tahoe, continued their efforts to connect equipment to the Tahoe. Mr. Patterson continued to go from one side of the Tahoe to the other, threatening to strike Mr. VanReed and or his passenger, causing them to repeat, and then disconnecting the equipment that had been connected by Mr. VanReed and his passenger.

23. Mrs. Patterson brought Mr. Patterson his shirt, pants and boots, which Mr. Patterson put on while he continued to disconnect the equipment that Mr. VanReed and his passenger continued to re-connect.

24. Mrs. Patterson brought Mr. Patterson the key to the Tahoe. Mr. Patterson got in the Tahoe and started the motor, but Mr. VanReed again reconnected towing equipment to the Tahoe with Mr. Patterson inside the running Tahoe. Mr. Patterson exited the Tahoe, again disconnected the equipment, and re-entered the Tahoe, intending to drive away. However, Mr. VanReed had used his tow truck to trap the Tahoe against the garage, preventing Mr. Patterson from leaving with the Tahoe and imprisoning Mr. Patterson against his will.

25. Mr. Patterson turned off the motor to the Tahoe, exited the vehicle, and confronted Mr. VanReed, again demanding that Mr. VanReed get off of Mr. Patterson's property. At that point, Mr. VanReed warned Mr. Patterson to step back. Mr. VanReed then pulled open

5

the side of his coat and motioned to a handgun that Mr. VanReed was wearing on his waist in a holster. Having been threatened with a handgun, Mr. Patterson backed away. Mr. VanReed again began to reconnect equipment to the Tahoe. Mr. Patterson again confronted Mr. VanReed and began to argue with Mr. VanReed. As things escalated, Mr. VanReed again warned Mr. Patterson to step back and again pulled open the side of his coat and displayed a handgun to Mr. Patterson. Having again been threatened with a handgun, Mr. Patterson again backed away.

26. A few moments later, police officers Stephen Rellinger and Margaret McKinnon, each employed by the City of Wyoming, Michigan, arrived at the Patterson residence in separate patrol cars, walked along the driveway, and entered the Pattersons' back yard.

27. Both officers first spoke with Mr. VanReed. Officer Rellinger then spoke with Mr. Patterson while Officer McKinnon remained with Mr. VanReed. Officer Rellinger stated to Mr. Patterson that Mr. VanReed had shown the officers paperwork from Credit Acceptance Corporation, instructing ARM and Mr. VanReed to repossess the Tahoe. Mr. Patterson responded that he and Mrs. Patterson had been in contact with CAC to complain that CAC had not yet provided them with payment coupons and related documentation, that CAC was at fault, that the dispute was a civil matter, and that Mr. Patterson was not going to let anyone take the Tahoe from his property. Officer Rellinger again stated that he had reviewed Mr. VanReed's documents from CAC and had determined that Mr. VanReed had the legal right to take the Tahoe at that time. Mr. Patterson became increasingly agitated and stated that it was his understanding of the law that because Mr. VanReed had been ordered to leave, he did not have the right to take the Tahoe from the Pattersons' back yard. Officer McKinnon then spoke up and stated that Mr. VanReed had the right to take the Tahoe but that the officers would allow the Pattersons to remove their personal property from the Tahoe.

28. Officer Rellinger ordered Mr. Patterson to step away and stood watch over Mr. Patterson while Mr. VanReed connected the Tahoe to the ARM tow truck.

29. Once the Tahoe was connected to the ARM tow truck, Mr. VanReed began to operate a mechanism to lift the Tahoe. In the process, Mr. VanReed caused the front of the Tahoe to strike the Pattersons' garage door, causing damage to both the Tahoe and the garage door.

30. Mr. VanReed demanded that Mr. Patterson give him the keys to the Tahoe so that Mr. VanReed could straighten out the front wheels of the Tahoe and make it easier to tow. Mr. Patterson refused to give Mr. VanReed the keys to the Tahoe.  Officer Rellinger then ordered Mr. Patterson to give Mr. VanReed the keys to the Tahoe.  Mr. Patterson refused and went into his house.

31. While the officers stood guard, Mr. VanReed installed additional sets of wheels under the front tires of the Tahoe. Officer McKinnon then helped guide Mr. VanReed, his tow truck and the Tahoe out of the Pattersons' back yard and into the street.

32. Mr. VanReed and his passenger drove off, towing the Tahoe behind them.

33. Mr. Patterson went back outside and provided information to the police officers for their reports. Mr. Patterson complained about the damage to the Tahoe and his garage. Officer Rellinger told Mr. Patterson that if he wanted compensation or other relief, Mr. Patterson would need to file a lawsuit.

34. ARM and Mr. VanReed breached the peace in connection with their taking of the Tahoe from Plaintiffs.

35. ARM and Mr. VanReed did not have a present right to possession of the Tahoe when they took the Tahoe from Plaintiffs' property.

36. As an actual and proximate result of the acts and omissions of defendants and their employees and agents, plaintiffs have suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which they should be compensated in an amount to be established by jury and at trial.

**V.     Claims for Relief**

### Count 1 – Fair Debt Collection Practices Act

37. Plaintiff incorporates the foregoing paragraphs by reference.

38. Each defendant has violated the FDCPA, 15 U.S.C. § 1692f(6).

**Wherefore,** plaintiff seeks judgment against defendants for:

a)    Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)    Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)    Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)    Such further relief as the court deems just and proper.

### Demand for Trial by Jury

Plaintiffs demand trial by jury.

Dated: January 9, 2017                    /s/ Phillip C. Rogers
                                          Phillip C. Rogers (P34356)
                                          Kevin J. Rogers (P81303)
                                          Attorneys for Plaintiffs
                                          6140 28th Street SE, Suite 115
                                          Grand Rapids, Michigan 49546-6938
                                          (616) 776-1176
                                          ConsumerLawyer@aol.com